**GLOBAL LEGAL LAW FIRM**
James C. Huber, Esq. (SBN 269488)
jhuber@attorneygl.com
Joshua J. Herndon (SBN 244106)
jherndon@attorneygl.com
322 Encinitas Blvd., Suite 200
Encinitas, CA 92024
Telephone: (888) 846-8901
Facsimile: (888) 846-8902

Attorneys for Defendant, CLIQ, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKY FINANCIAL AND INTELLIGENCE, LLC, a limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CLIQ, INC., a California Corporation,<br><br>Defendant. | Case No: 8:22-cv-1670-ADS<br><br>Magistrate Judge: Autumn D. Spaeth<br>Ctrm. 6B<br><br>**DEFENDANT CLIQ, INC.'S MOTION *IN LIMINE* NO. 2 TO LIMIT PLAINTIFF SKY FINANCIAL AND INTELLIGENCE, LLC'S TRIAL WITNESSES WITH INFORMATION IT MAY USE TO SUPPORT THEIR CLAIMS AND DEFENSES (UNLESS THE USE WOULD SOLELY BE FOR IMPEACHMENT) TO THOSE THEY DISCLOSED IN THEIR INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)** |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant Cliq, Inc. (hereinafter, "Cliq") hereby files its Motion *in Limine* No. 2 and moves this Court for an order limiting Plaintiff Sky Financial and Intelligence, LLC's (hereinafter "Sky Financial") trial witnesses with information it may use to support their claims and defenses (unless the

1

1  use would solely be for impeachment) to those they disclosed in their initial disclosures
2  pursuant to Rule 26(a)(1).

3      This motion is based upon the supporting Memorandum of Points and
4  Authorities, the pleadings and papers on file in this action, and upon such of the
5  argument and evidence as may be presented prior to or at the hearing of this matter.

Dated: July 18, 2024              **GLOBAL LEGAL LAW FIRM**

                                        By:  */s/ Joshua J. Herndon*
                                              James C. Huber
                                              Joshua J. Herndon
                                              Attorneys for Defendant,
                                              CLIQ, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. RELEVANT BACKGROUND

Sky Financial is a former sales agent of Cliq who earned commissions from Cliq in the payment processing industry. Pursuant to an "Acquiring Independent Contractor Agreement" (the "Agreement") entered into between these parties in 2020, Sky Financial marketed Cliq's services and solicited merchants' business on Cliq's behalf.

In 2021, Cliq discovered numerous acts of misconduct committed by Sky Financial in breach of the Agreement, and accordingly sent Sky Financial a notice immediately terminating the same (the "Notice"). These acts included but were not limited to: 1) failing to conduct business in a manner that reflects favorably on the good name, goodwill and reputation of Cliq, resulting in Sky Financial being placed on the Mastercard "MATCH" List; 2) failing to acknowledge and take responsibility for high merchant chargebacks; 3) making unauthorized disclosures to third parties of Cliq's confidential and proprietary information, and 4) encouraging merchants to fraudulently inflate their monthly transaction levels for the purpose of masking chargeback rates. Cliq did not file a legal action against Sky Financial, but was well within its rights to do so.

More than a year after receiving the Notice, Sky Financial retaliated by filing its Complaint against Cliq on September 9, 2022 (ECF 1), alleging that Cliq lowered commission rates and increased fees charged to Sky Financial, while admitting that Cliq was contractually authorized to unilaterally change Sky Financial's commissions. Sky Financial claims Cliq owes Sky Financial approximately $1.4 million. Cliq denies these claims.

Specifically, Sky Financial alleged that Cliq owed but failed to pay Sky Financial commissions of 75% over Sky Financial's "buy rate" for Cliq's transactions. (Complaint ¶ 5.) A buy rate is essentially a base price that a payment processor, or an ISO such as Cliq, places on certain transactions for its subagents, who would then acquire a revenue split based on payment received in excess of the buy rate. A buy rate

does not reflect the processor or ISO's true costs.

Sky Financial also alleged that Cliq: 1) unilaterally lowered Sky Financial's commission rates with respect to some merchants and paid no commission on others (Complaint ¶ 6); 2) as a result of alleged errors on residual reports, increased Sky Financial's buy rate (ibid); and 3) arbitrarily increased fees to Sky Financial (ibid). Sky Financial admitted that Cliq had the right to lower Sky Financial's commission rates if Sky Financial exceeded chargeback rates of 1% or entered a card association monitoring program, such as MATCH. (Complaint ¶ 18.) But Sky Financial claimed that those circumstances are absent in its Complaint. Based on these factual claims, Sky Financial brought causes of action against Cliq for breach of contract, restitution and unjust enrichment, conversion, and breach of covenant and good faith and fair dealing, seeking approximately $1.4 million in unpaid commissions.

In making its factual claims, Sky Financial repeatedly referenced the Agreement and, more frequently, to an exhibit to the same called "Schedule A". But Sky Financial attached neither the Agreement nor Schedule A to the Complaint. Despite Cliq's discovery demands, Sky Financial has never produced Schedule A or any other exhibit to the Agreement, has resisted Cliq's other discovery requests, and has cancelled all depositions duly noticed.

On November 14, 2022 (ECF 18), Cliq moved to dismiss Sky Financial's entire Complaint on the ground that Sky Financial lacked the capacity to sue in California, and alternatively Sky Financial's causes of action for conversion and rescission / unjust enrichment ("Motion"). The Court granted the dismissal of those two causes of action, but denied the Motion in part with respect to lack of capacity because the Agreement and its supporting exhibits were attached to neither the Complaint nor the Motion. On February 27, 2023 (ECF 31), Cliq filed an Answer denying that it 1) owed commissions to Sky Financial for 75% above the buy rate, 2) lowered commission rates to Sky Financial, 3) failed to pay Sky Financial commissions, 4) caused errors on residual reports (or that any errors existed), 5) raised fees on Sky Financial, or 6) owed

$1.4 million or any amount of unpaid commissions to Sky Financial. In short, Cliq denied all of Sky Financial's substantive claims. Trial is set for October 15, 2024.

## II. RELEVANT PROCEDURAL HISTORY

On November 9, 2022, Sky Financial served their Rule 26(a)(1) Initial Disclosure (the "Initial Disclosure"). (*See* Declaration of Joshua J. Herndon Declaration filed concurrently herewith (hereinafter, the "Herndon Declaration"), at ¶ 7, and Exhibit 4.) In the Initial Disclosure, Sky Financial disclosed the following individuals it represented as having discoverable information, along with the following information that Sky Financial may use to support claims or defenses (unless the use would solely be for impeachment):

| INDIVIDUAL | SUBJECT MATTER |
|---|---|
| Kenneth Haller | Plaintiff's claims; the parties Acquiring Independent Contractor Agreement on or about April 15, 2020 (the "Agreement") and its terms; Plaintiff's compliance with the Agreement and credit card processing rules; Defendant's compliance (or lack thereof) with the Agreement; Defendant's bad faith; Plaintiff's entitlement to, the amount of and calculation of damages in this case; and credit card processing practice and standard procedures |
| Jeff Whiting, Cliq, Inc. | Plaintiff's compliance with the Agreement; Defendant's non-compliance with the Agreement and credit card processing rules; Defendant's bad faith; Plaintiff's damages |
| Liza Anderson, Cliq, Inc. | Plaintiff's compliance with the Agreement and credit card processing rules; Defendant's non-compliance with the Agreement; Defendant's bad faith; Plaintiff's damages |
| Wendy Galaviz, Cliq, Inc. | Plaintiff's compliance with the Agreement and credit card processing rules; Defendant's non-compliance with the Agreement; Defendant's bad faith; Plaintiff's damages |
| PMK at Agent Relations, Cliq, Inc. | Plaintiff's compliance with the Agreement and credit card processing rules; Defendant's non-compliance with the Agreement; Defendant's bad faith; Plaintiff's damages |
| Andy Phillips, CEO of Cliq, Inc. | Plaintiff's compliance with the Agreement and credit card processing rules; Defendant's non-compliance with the Agreement; Defendant's bad faith; Plaintiff's damages |

| John Blaugrund, CTO of Cliq, Inc. | Plaintiff's compliance with the Agreement and credit card processing rules; Defendant's non-compliance with the Agreement; Defendant's bad faith; Plaintiff's damages |
|---|---|
| Don Moody, Director of Compliance and In House Counsel of Cliq, Inc. | Plaintiff's compliance with the Agreement and credit card processing rules; Defendant's non-compliance with the Agreement; Defendant's bad faith. |

(*See* Herndon Declaration, at ¶ 7, and Exhibit 4, at pages 2:22 to 4:14.)

Sky Financial never made any further disclosure under Rule 26 in these proceedings. (*See* Herndon Declaration, at ¶ 7.)

### III. APPLICABLE LEGAL STANDARD

Motions *in limine* are authorized and well-recognized in federal courts. (*Ohler v. United States* (2000) 529 U.S. 753, 758, fn. 3; *City of Pomona v. SQM North America Corp.* (9th Cir. 2017) 866 F.3d 1060, 1070; United States v. Heller (9th Cir. 2009) 551 F.3d 1108, 1111.) The Court has inherent power to grant a motion *in limine* based on the Court's inherent power to manage the course of trials. (*Luce v. United States* (1984) 469 U.S. 38, 41.)

A party's or attorney's signature on a disclosure document constitutes a *certification* that it is complete and correct to the best of the signer's knowledge and belief, formed after reasonable inquiry. (FRCP 26(g)(1)(A).)

A party who fails to make the required initial disclosure "is *not allowed* to use that information or witness to supply evidence on a motion, at a hearing, or at trial" except where the failure to comply with disclosure requirements was "substantially justified" or "harmless." (FRCP 37(c)(1) (emphasis added); *Hoffman v. Construction Protective Services, Inc.* (9th Cir. 2008) 541 F.3d 1175, 1179; *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.* (9th Cir. 2001) 259 F.3d 1101, 1106.)

Whether a Rule 26(a) violation is "justified" or "harmless" is entrusted to the court's discretion based on such factors as:

- importance of the evidence;
- whether the party against whom it is offered is prejudiced or surprised

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

(*Goodman v. Staples The Office Superstore, LLC* (9th Cir. 2011) 644 F3d 817, 827);

- that party's ability to discover the evidence;
- whether the nondisclosure was willful or inadvertent; and
- whether exclusion of the evidence would disrupt the trial.

(*Southern States Rack & Fixture, Inc. v. Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.* (4th Cir. 2003) 318 F.3d 592, 597; *David v. Caterpillar, Inc.* (7th Cir. 2003) 324 F.3d 851, 857.)

Failing to disclose a witness may be "harmless" if the witness' identity is already known to the opposing party, or if it has been disclosed by other parties. (Adv. Comm. Notes on 1993 Amendments to FRCP 26(a); *El Ranchito, Inc. v. City of Harvey* (ND IL 2002) 207 F.Supp.2d 814, 818—failure to disclose persons known to opposing party and "obvious" subjects for deposition was "harmless".) Defendants failed to disclose the identities of 38 persons whom they proposed to call as witnesses at trial until the final pretrial conference. The untimely disclosure was not harmless because it potentially impacted decisions plaintiffs had made during the course of litigation, and reopening discovery would be unduly costly for plaintiffs and would disrupt the court's schedule. (*Ollier v. Sweetwater Union High School Dist.* (SD CA 2010) 267 FRD 339, 343.)

The party facing sanctions bears the burden of proving its failure to disclose the required information was substantially justified or harmless. (*R & R Sails, Inc. v. Insurance Co. of Penn.* (9th Cir. 2012) 673 F3d 1240, 1246.)

Unless the nondisclosure is "harmless" or excused by "substantial justification," the court must impose this evidence preclusion sanction. This "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." (Adv. Comm. Notes on 1993 Amendments to FRCP 26(a); *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, *supra*, 259 F3d at 1106; *NutraSweet Co. v. X-L Engineering Co.* (7th Cir. 2000) 227 F3d 776, 785-786.)

Evidence preclusion under Rule 37 is not dependent on a finding of willfulness or bad faith. (*Hoffman v. Construction Protective Services, Inc.* (9th Cir. 2008) 541 F.3d 1175, 1180.)

## IV. ARGUMENT

An order limiting Sky Financial's trial witnesses with information it may use to support their claims and defenses (unless the use would solely be for impeachment) to those they disclosed in their initial disclosures pursuant to Rule 26(a)(1) would essentially operate as a preclusion order under FRCP 37.

Sky Financial served the Initial Disclosure on November 9, 2022, and it has had more than twenty months thereafter to update it with additional potential witnesses. Instead, the Initial Disclosure refers only to (1) Ken Haller (who is an officer of Sky Financial), and (2) numerous personnel related to Cliq.

Unless used solely for impeachment, Sky Financial should not be able to use any witness to supply any evidence to support its claims if it failed to disclose the witness in its Initial Disclose, since the failure to disclose the witness would be neither substantially justified nor harmless. It would be highly prejudicial to Cliq if Sky Financial was allowed to call witnesses to supply evidence to support its claims that it failed to disclose in its Initial Disclosure. That is because Sky Financial would disclose such witnesses for the first time only after the expiration of the discovery cut-off, and after Cliq was unable to depose the witnesses. If Sky Financial had disclosed such additional witnesses in their Initial Disclosure, Cliq would have focused on deposing those witnesses prior to the Discovery Cut-Off.

In sum, Sky Financial's disclosure of any witness to supply any evidence to support its claims would not be harmless because it will have impacted decisions Cliq made during the course of litigation, and reopening discovery at this late date would be unduly costly for Cliq and would disrupt the court's schedule.

## V. CONCLUSION

For the foregoing reasons, Cliq hereby respectfully requests from this Court an

order *in limine* limiting Sky Financial's trial witnesses with information it may use to support their claims and defenses (unless the use would solely be for impeachment) to those they disclosed in the Initial Disclosure.

Dated: July 18, 2024          **GLOBAL LEGAL LAW FIRM**

By:   */s/ Joshua J. Herndon*
      James C. Huber
      Joshua J. Herndon
      Attorneys for Defendant,
      CLIQ, INC.

Sky Financial and Intelligence, LLC v. Cliq, Inc.
United States District Court, Central District of California, Case No. 8:22-cv-1670-ADS

# CERTIFICATE OF SERVICE

I, JAMES C. HUBER, hereby certify that on July 18, 2024, I caused to be electronically filed **DEFENDANT CLIQ, INC.'S MOTION *IN LIMINE* NO. 2 TO LIMIT PLAINTIFF SKY FINANCIAL AND INTELLIGENCE, LLC'S TRIAL WITNESSES WITH INFORMATION IT MAY USE TO SUPPORT THEIR CLAIMS AND DEFENSES (UNLESS THE USE WOULD SOLELY BE FOR IMPEACHMENT) TO THOSE THEY DISCLOSED IN THEIR INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)**, with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail, electronic mail, or by other means permitted by the court rules.

Dated: July 18, 2024                    **GLOBAL LEGAL LAW FIRM**

By: */s/ James C. Huber*
    James C. Huber
    Joshua J. Herndon
    Attorneys for Defendant,
    CLIQ, INC.

10
CERTIFICATE OF SERVICE